## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ESTHER CANDIDO,                          :
                                         :
        Plaintiff,                       :        Civ. No. 08-3612(DRD)
                                         :
        v.                               :
                                         :        **O P I N I O N**
MICHAEL ASTRUE,                          :
Commissioner of Social Security,         :
                                         :
        Defendant.                       :
_____  :

Legal Services of New Jersey
100 Metroplex Drive at Plainfield Ave.
P.O. Box 1357
Edison, New Jersey 08818
        By: Kevin Liebkemann, Esq.
        Attorney for Plaintiff

Paul Fishman
United States Attorney
Margaret A. Donaghy
Special Assistant U.S. Attorney
c/o Social Security Administration
26 Federal Plaza, Room 3904
New York, New York 10278
        Attorneys for Defendant

**Debevoise, Senior District Judge**

        Plaintiff, Esther Candido, appeals from a final determination of the Commissioner of

Social Security (the "Commissioner"), denying her application for Supplemental Security Income

benefits ("SSI") under Title XVI of the Social Security Act (the "Act").

## I.  Procedural History

The procedural history of this case is a protracted one, and because due process issues

must be addressed, this history must be set forth at considerable length.

Plaintiff[1] originally filed an application for SSI on November 15, 1993, alleging disability as of 1979 due to endometriosis.  Her claim was denied through the hearing level.  In a September 27, 1996 decision Administrative Law Judge ("ALJ") Muehlig denied plaintiff's claim.  Plaintiff filed a request for review in the Appeals Council which, on May 29, 1997 denied the request.  Plaintiff filed a complaint in this Court seeking reversal of the Commissioner's decision.

The Court reversed and remanded the case to the Commissioner.  Its August 20, 1999 Decision and Order required that on remand the Commissioner take certain actions: (1) Because the consultative examination of Dr. Feman had not performed a rectal or pelvic examination or taken relevant clinical tests, despite the fact that Plaintiff's chief complaints stemmed from spastic colitis and endometriosis, the Court directed that the Commissioner should purchase another consultative examination and specify that the consultative examiner should perform a rectal and pelvic examination, as well as any other medical examinations or laboratory or diagnostic tests that would develop the record more fully (2) because the Physical Capacities Evaluation form upon which the ALJ relied was inadequate and lacked substantial support in the record, on remand the medical expert should prepare a new Physical Capacities Evaluation addressing the additional evidence that is submitted; (3) having failed to consider the combined effects of Plaintiff's exertional and non-exertional impairments, the ALJ improperly relied solely on the grid guidelines to determine if Plaintiff is able to engage in gainful employment, and on

---

[1] Until February 24, 2004, Plaintiff proceeded pro se, at which time she retained Legal Services of New Jersey to represent her.

2

remand a vocational expert should be called upon to determine if Plaintiff is capable of performing other jobs in the national economy; and (4) on remand the ALJ should consider the evidence submitted by Plaintiff to supplement the record before the Appeals Council, along with any additional evidence Plaintiff decides to submit and all additional medical and vocational evidence required by the opinion.

On February 1, 2001 the Appeals Council remanded the case to an ALJ, who "will comply with the court order, provide the claimant an opportunity to appear at a hearing, pursuant to 20 C.F.R. §§ 404.1512-404.1518 and/or 416.912-415.918, and issue a new decision. (R. 134).

On February 23, 2001 ALJ Muehlig sent to Plaintiff a notice of a hearing in her case to be held on March 19, 2001.  The notice was accompanied by a list of legal services projects to which Plaintiff could apply for assistance if she could not afford to pay for representation.  (R. 139-145).

It appears that there were filed in the case a Medical Examining Physician's Report in which the reporting physician completed 17 pages of questions (R. 146-163) and 4/99, 6/99 and 6/00 one page reports of Dr. Richard G. Pizzano. (R. 164-166)

Plaintiff failed to appear at the March 19 hearing and on March 23, 2001 the ALJ sent her a Notice to Show Cause for failure to appear in which he advised her, among other things, that if she could show good cause for the non-appearance he would schedule another hearing.  (R. 167). On March 31 Plaintiff wrote the ALJ and stated that she "cannot be present because of the two conditions with my stomach.  I've been having pain, and using the bathroom frequently.  And also I'm in a lot of pain with my herniated disk.  And my mom had a stroke."  Plaintiff further wrote: "Please your Honor, make your decision based on all the additional medical evidence, I

3

mailed in to you on 3/15/01." (R. 168).

On May 9, 2001 the ALJ informed Plaintiff that he had requested the Disability Determination Services to schedule a consultative examination for her.  He advised Plaintiff that "[s]ince this examination is necessary for the proper evaluation of your claim, it is urged that you give your full cooperation to the arrangements made."  (R. 169).  An examination was scheduled for June 11, 2001, of which Plaintiff was notified.

A internal government Report of Contact dated June 11, 2001 recites, "Mr. Perry, brother of claimant Ester (sic) Candido, called to inform that his sister is not going to the Ct appointment on 6/11/01 that was arranged for her."  (R. 172)

The ALJ arranged with vocational expert Rocco J. Meola to testify at a hearing scheduled for August 8, 2001.  Mr. Meola was informed that "your testimony will be based, in part, on the testimony given by the claimant and any other witnesses, including a medical expert if needed. (R. 177).  On June 22, 2001 the ALJ notified Plaintiff of the August 8 hearing date.  The description of the subjects to be considered at the hearing included the following: "I plan to look with special care into the issue of COURT REMAND.  This supplemental hearing is being held pursuant to Order of Appeals Council to the undersigned dated February 1, 2001 following remand of Civil Action No. 97-5516 by the United States District Court for the District of New Jersey."  (T. 181-184).

On July 11, 2001 Plaintiff checked the box on the Acknowledgment of Receipt (Notice of Hearing form) that stated "I cannot be present at the time and place shown on the Notice of Hearing.  I request that you reschedule my hearing because:"

She then wrote:

4

> Please your Honor, I cannot be present, because of my health problems.  Please I request that please your Honor make your decision based on all the additional Medical evidence I mailed in to you on 3/15/01.  And my Mother had a stroke.
>
> I'm very Sorry Your Honor in the delay in mailing this Form to you, the reason it's a little late, is because my Uncle recently had a stroke also.  I'm really so sorry for the delay.  Between my health and the family illness this is the reason I cannot be present.

(R. 185)

On July 30, 2001, having been advised that Plaintiff would not attend the August 8 hearing, the ALJ sent interrogatories to Mr. Meola, the vocational expert, asking him to examine the relevant exhibits and then respond.  (R. 186).  The critical questions and answers read as follows:

> 6.  Have you read the copies of exhibits in this case pertaining to the claimant's vocational background and residual functional capacity?
>       Yes
>
> 7.  Is there sufficient objective evidence of record to allow you to form an opinion of the claimants vocational status?  Yes.  If not, what additional evidence is required?
>
> 8.  Please state the following:
>
> Claimant's age, in terms of the applicable age category described in sections 404.1563 and 416.963 of Regulations Nos. 4 and 16.    43 years old considered a younger individual.
>
> Claimant's education, in terms of the applicable education category described in sections 404.1564 and 416.964 of Regulations Nos. 4 and 16.   Claimant has 9 years of Education which is considered a limited education.
>
> Claimant's past relevant work (PRW); i.e., the claimant's work experience during the last 15 years, in terms of the physical exertion and skill requirements described in sections 404.1567, 404.1568,

416.967 and 416.968 of Regulations Nos. 4 and 16, and the
Dictionary of Occupational Titles.   The claimant has no work
experience in the past 15 years.

The extent that any job during the last 15 years required lifting,
carrying, pushing, pulling, sitting, standing, walking, climbing,
balancing, stooping, kneeling, crouching, crawling, reaching,
handling, fingering, feeling, talking, hearing and seeing, as well as
any environmental or similar aspects of the job (indoors, outdoors,
extremes of heat or cold, wetness, noise, vibration and exposure to
fumes, odors or toxic conditions).

9. If the claimant's PRW was either at a skilled or semi-skilled level,
describe the skills acquired by the claimant during the performance
of the job(s), and furnish a complete explanation for your opinion(s).
N.A.

10.   Hypothetical Questions: Assuming the claimant was otherwise
capable of performing light work and limited by a treating source
from sitting "for any long period of time", which we shall
conservatively define as a continuous period exceeding two hours
without the opportunity to stand or walk, what jobs in the regional
and national economies would she be able to perform, and the
numbers of such jobs in the respective economies?   Yes

11.  With same limitation as in (10.), what jobs would there be for her
in the sedentary category?

|                |           |
|----------------|-----------|
| Parts cleaner  | Polisher  |
| Assembler      | Ticketer  |
| Wireworker     | Sorter    |

(R. 187-8).

On November 15, 2001 the ALJ issued a decision on the record, concluding that Plaintiff

was not eligible for SSI.  Plaintiff appealed to the Appeals Council.  On January 21, 2001 the

Appeals Council remanded the case to another ALJ, stating:

The Administrative Law Judge obtained evidence from a vocational
expert by written interrogatory and response.  However, he did not

proffer this evidence to the claimant, so that she did not have an opportunity to consider the evidence or to respond to it before the decision was made.

Upon remand, the Administrative Law Judge will:

Offer the claimant an opportunity (by mail or in person) to see and respond to the evidence provided by the vocational expert.

Obtain additional evidence concerning the claimant's endometriosis, in order to complete the administrative record. The additional evidence may include, if warranted and available, a consultative internists examination and medical source statements about what the claimant can still do despite her impairment. Absent such additional evidence, the Administrative Law Judge would appear to have been justified in determining that the claimant was able to do light to sedentary work, with no prolonged sitting.

(R. 203-04)

The case was assigned to Administrative Law Judge Richard L. De Steno. On February 9, 2004 the ALJ mailed to Plaintiff copies of the vocational expert's interrogatories and answers with a deadline for response of February 19. Also on February 9, 2004 the ALJ mailed to Plaintiff a request for additional evidence regarding her endometriosis. "It is essential that the names and addresses of all sources, if any, who have treated you for endometriosis since November 15, 2001 [be] provided to me. I am enclosing a postage-paid envelope for you to mail your response." The ALJ requested that Plaintiff forward the material by February 23, 2004. (R. 92).

There was no response to either letter by the deadline dates or thereafter. However on February 24, 2004 David M. Pantos, Esq., an attorney with Legal Services of New Jersey wrote to the ALJ stating:

I am entering my appearance as Ms. Candido's attorney in her SSI

7

> claim.  I have attached an Appointment of Representative form to this
> letter.  Please forward any future correspondence in this matter to my
> attention.  I have already made a copy of the file.

(R. 206, 208)

On March 16, 2004 the ALJ issued a decision holding that Plaintiff was not eligible for

SSI.  (R. 88-97).  Plaintiff's attorney filed an appeal with the Appeals Council.  (R. 87).  On May

24, 2004 the Appeals Council held that the findings and conclusions contained in the ALJ's

decision were supported by substantial evidence (R. 81-2), stating:

> After careful review, the Appeals Council is persuaded that the
> Administrative Law Judge has complied with [the] courts instructions
> in evaluating the case.  The claimant was given an opportunity to
> appear at the hearing and submit additional evidence in support of her
> impairments.   Additional evidence was not submitted and the
> claimant asked for a decision on the record.  Although the Council
> subsequently remanded because procedural documents were not in
> the record, those documents have now been made exhibits.

(R. 81).

Plaintiff appeals the ALJ's March 16, 2004 decision which, by virtue of the action of the

Appeals Council, is the final decision of the Commissioner.

## II.  Discussion

With considerable reluctance, the Court will reverse the decision of the ALJ in this 16

year old case and remand it for what it is to be hoped will be a concluding proceeding before an

ALJ.  On the one hand the Court sympathizes with the overburdened Administrative Law Judges

frustrated in their good faith efforts to comply this Court's directives in a remand order by foolish

decisions of the Plaintiff.  On the other hand the Court is presented with an undeveloped record

which might or might not establish that a pro se, unwell welfare recipient only recently

8

represented by an attorney is entitled to SSI.  In light of an ALJ's duty to develop the record, the inadequacy of the record in this case and the likelihood that, with Plaintiff now having counsel, the record can be completed, the case will be remanded for completion of the record.

Plaintiff's history and general medical circumstances are set forth in the Court's August 20, 1999 Opinion (the "Court's Opinion").  (R. 101-104).  The medical evidence is summarized in the Court's Opinion (R. 104-111).  These portions of the Court's Opinion will be incorporated herein by reference.  During the course of the proceedings on remand a limited amount of medical evidence was added to the record, and it will be referred to from time to time below.

At the outset the Court rejects Plaintiff's contentions that the Commissioner violated Plaintiff's due process rights by depriving her of a hearing.  Plaintiff does not argue that ALJ deprived her of a right to a hearing before ALJ Muehlig.  It cannot be questioned that as to the hearings ALJ Muehlig scheduled Plaintiff refused to attend and wrote to him, "Please your Honor, make your decision based on all the additional medical evidence I mailed to you on 3/15/01."  (e.g. R. 168).  It is only as to ALJ DeSteno that Plaintiff claims that: "ALJ DeSteno denied Ms. Candido's case without a hearing.  Neither Ms. Candido nor counsel waived the right to hearing with ALJ DeSteno."  (Reply Brief at 4).

To establish this claim Plaintiff relies upon a snippet taken from her December 17, 2001 letter to the Appeals Council expressing her disagreement with ALJ Muehlig's November 15, 2001 Decision: "I please request a fair hearing . . ." (R. 201 l.3).   This was simply a characterization of the ALJ's Decision, not a request for a hearing.

With respect to ALJ DeSteno, there was no new evidence presented to him; Plaintiff had ignored his requests for names of her physicians and additional evidence regarding her

9

endometriosis; and there was nothing to suggest that she had abandoned her long-standing refusal to attend hearings, even if a hearing were required in the circumstances of the De Steno proceeding. ALJ DeSteno's issuance of a decision without going through the inevitably futile effort to schedule a hearing did not constitute a due process violation. There remains the question whether, in light of the fact that an attorney had filed an appearance on behalf of Plaintiff, he should have exercised his discretion to give the attorney an opportunity to assist Plaintiff remedy her many deficiencies.

Plaintiff's principal argument is that Defendant failed to follow the Court's directions contained in the Court's Opinion. The fact of the matter is that the ALJ's hearing the case attempted to comply with the various directives but were prevented from doing so by Plaintiff's failure to cooperate.

The Court required that the Commissioner arrange for another consultative examination and specify that the examiner should perform a rectal and pelvic examination as well as any other medical examinations or laboratory or diagnostic tests that would develop the record fully. On May 9, 2001 the ALJ informed Plaintiff that he had requested the Disability Determination Services to schedule a consultative examination for her and urged her to cooperate with arrangements made for the examination. It is unknown whether the ALJ called for as detailed an examination as the Court's Opinion required, but that is academic because Plaintiff, through her brother, informed the ALJ that she would not go to the scheduled June 11, 2001 examination.

The Court's Opinion required that the medical expert should prepare a new Physical Capacities Evaluation addressing the additional evidence that is submitted. Plaintiff submitted some additional records in the form of records of treating physician Dr. Pizzano (R. 146-166).

10

Much of these records are incomprehensible to a lay person and would have to be reviewed by a physician. The ALJs did not seek a new report from the examining physician, Dr. Fechner, whose original report opining about Plaintiff's physical capacities was critical in the ALJ opinions on remand. However, a new report would have been of equally limited value if the medical expert did not have available the results of a consultative examination of the kind Plaintiff refused to attend.

The Court's Opinion required that on remand a vocational expert be called upon to determine if Plaintiff is capable of performing other jobs in the national economy. In response the ALJ arranged with vocational expert Rocco J. Meola to testify at a hearing scheduled for August 8, 2001. Plaintiff was informed of the hearing date on June 22, 2001 and was also informed that at the hearing the ALJ would look with special care at the issues raised in the Court's remand. On July 11, 2001 Plaintiff informed the ALJ that she could not be present at the hearing and asked the ALJ to "make your decision based on all the additional Medical evidence I mailed in to you on 5/15/01." (R. 185)[2]

Faced with this impass, ALJ Muehlig proceeded with the vocational expert by way of interrogatory as described above. Subsequently, also as described above, ALJ DeSteno, when he picked up the proceedings, sent a copy of the interrogatories and answers to Plaintiff and, not receiving a response, entered a final decision on March 16, 2004.

The final requirement contained in the Court's Opinion was that the ALJ consider the evidence submitted by Plaintiff to supplement the record before the Appeals Council

---

[2] It is not clear what material Plaintiff mailed to the ALJ on 3/15/01. Presumably it is treating physician Dr. Pizzano's medical records set forth in the record at pages 146-166.

11

(presumably the reports of Dr. Pizzano (R. 146-166)) along with any additional evidence Plaintiff decides to submit and all additional medical and vocational evidence required by the Court's Opinion. Because of Plaintiff's actions, or inactions, the additional medical and vocational evidence was limited; the record was inadequate and there did not seem to be much that the Commissioner could do as a practical matter to cure the situation.

At the very last minute, after Plaintiff had declined to participate in the August 8, 2001 hearing with the Vocational Expert and after Plaintiff had failed to respond to the vocational expert's answers to interrogatories by the February 19, 2004 deadline, attorney David M. Pantos, Esq. on February 24, 2004 entered the case on behalf of Plaintiff. He did no more than advise the ALJ of his appearance.

It is understandable that the ALJ would conclude that enough is enough and enter a decision, which he did on March 16, 2004, holding that Plaintiff was not entitled to benefits. However, in the extreme circumstances of this case Plaintiff's attorney should have been given the opportunity to cure his client's serious missteps.

There can be no question that Plaintiff, a 51 year old woman, is suffering, and has been suffering for decades from endometriosis and other related ailments. The endometriosis is characterized by severe, recurring pelvic pain, rectal pain and bleeding. Her spastic colitis is a digestive disorder that causes episodes of severe pain and incontinence.

One tragic aspect of the situation is the fact that the endometriosis could possibly have been eliminated completely if Plaintiff had a total hysterectomy. She is a welfare recipient, living on approximately $360 per month, and this likely made it difficult for her to obtain advanced surgical treatment. She lived with her mother and brother and never worked. Her

12

mother suffered a stroke early in these proceedings.  Proceeding pro se, she failed to appreciate the critical nature of the hearings and medical examinations which were scheduled for her.

Belatedly this situation changed when she was able to retain an attorney to represent her. The attorney has the experience and ability to apply to reopen the proceedings so that the deficiencies noted in the Court's Opinion could be cured.  It would require the patience of Job for the ALJ to reopen for this purpose, but in light of the care with which the Commissioner must handle these cases, the ALJ should have given the attorney, just recently retained, the opportunity to present fully the Plaintiff's case.

The case will be remanded and the Commissioner required to complete the directions contained in the Court's Opinion of August 20, 1999.  It is expected that Plaintiff's attorney will ensure that she cooperate and is able to participate in the hearings and medical examinations so that the Commissioner can perform these directions.  It is also expected that, in view of the age of this case the Commissioner will expedite it to the full extent practical.[3]

The court will file an order implementing this opinion.


    _/s/ Dickinson R. Debevoise_
    DICKINSON R. DEBEVOISE
    U.S.S.D.J.


Dated: October 27, 2009

---

[3]  It serves no purpose to address the other objections Plaintiff raises to the ALJ's decision.  Because the record will be expanded on remand these objections will likely be resolved or become moot.

13